OPINION
Appellant William Ervin appeals his conviction, in the Stark County Court of Common Pleas, for one count of possession of cocaine and one count of tampering with evidence. The following facts give rise to this appeal.
During the week of June 7, 2000, the Alliance Police Department learned of drug activity in Room 500, of the Comfort Inn, located on West State Street in the City of Alliance. The police department also learned that an individual, with the street name "E", was involved with the drug activity at the Comfort Inn. Based upon this knowledge, a search warrant was obtained to search Room 500 and the person named "E."
On June 7, 2000, at approximately 11:00 p.m., Officer Joseph Weyer and Detective Donald Bartolet learned that appellant had just left Room 500. Upon learning this information, the officers set up surveillance of Room 500, from an adjacent room. Shortly thereafter, the officers observed a vehicle matching the description of the suspect's vehicle return to the hotel parking lot. The officers left their room and began slowly walking down the hallway toward the stairwell, eventually passing appellant. The two officers turned around, at the stairwell, when they heard appellant open the door to Room 500. The officers approached appellant, identified themselves and entered the room with him.
Upon entering Room 500, appellant began backing up and Officer Weyer took appellant to the floor for his safety. Officer Weyer noticed that appellant cupped plastic cellophane containing a substance, in his hand, which appeared to be crack cocaine. Appellant put the cellophane containing the substance, in his mouth, and began chewing. Officer Weyer put his hand under the base of appellant's jaw to prevent appellant from swallowing the substance. Officer Weyer succeeded and appellant eventually spit the cellophane containing the substance from his mouth.
Thereafter, the officers arrested appellant and charged him with one count of possession of cocaine and one count of resisting arrest. Appellant's case proceeded to a preliminary hearing in the Alliance Municipal Court. The court found probable cause and bound appellant's case over to the Stark County Grand Jury. The grand jury indicted appellant on one count of possession of cocaine and one count of tampering with evidence.
Appellant's case proceeded to trial on August 14, 2000. At trial, appellant testified that he came to Alliance, from Cleveland, just to party and that he returned to Room 500 merely to retrieve a bottle of liquor. Appellant denied that the crack cocaine belonged to him. Following deliberations, the jury found appellant guilty as charged in the indictment. The trial court proceeded to sentence appellant to a determinate four year sentence for one count of tampering with evidence and a determinate fifteen month sentence for one count of possession of cocaine. The trial court ordered the sentences to be served consecutively.
Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN DENYING HIS REQUEST FOR A NEW ATTORNEY THUS DENYING THE DEFENDANT/APPELLANT HIS SIXTH AMENDMENT RIGHT TO COUNSEL UNDER THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION.
 II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN FAILING TO FIND THAT THE PROSECUTOR EXERCISED HIS PEREMPTORY CHALLENGE IN A RACIALLY DISCRIMINATORY MANNER, IN VIOLATION OF HIS RIGHT TO EQUAL PROTECTION OF THE LAW GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND SECTION TWO, ARTICLE ONE OF THE OHIO CONSTITUTION.
 III. PROSECUTOR MISCONDUCT DURING VOIR DIRE AND CLOSING ARGUMENT DENIED THE DEFENDANT/APPELLANT HIS FOURTEENTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL TRIAL.
 IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY DENYING THE DEFENSE MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29(A) AT THE CLOSE OF THE STATE'S EVIDENCE AND AT THE CLOSE OF ALL OF THE EVIDENCE, IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION WHERE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR TAMPERING WITH EVIDENCE.
 V. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION AND THEREFORE, THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
Appellant contends, in his First Assignment of Error, that the trial court erred when it denied his request for a new attorney. We disagree.
On the morning of trial, defense counsel informed the trial court that appellant was dissatisfied with his representation and that he wanted to retain new counsel. The following discussion occurred on the record:
 DEFENSE COUNSEL: Your Honor, my client wishes to address the Court. He's expressed some dissatisfaction with my representation. He's indicated that he does wish to hire private counsel.
 I've explained to [appellant] that, because of the time constraints here, it would be very unlikely for a private attorney to be prepared to go forward and the Court, in all likelihood, is not going to continue the matter because of that. * * *
THE COURT: Make a statement.
 APPELLANT: I just wanted to get me a lawyer to fight my case. I feel like he ain't representing me right. I want to pay a lawyer to represent me.
THE COURT: Motion denied. Bring in the jury.
Tr. at 6-7.
Appellant maintains that after he made the request for new counsel, the trial court had an obligation to inquire into his complaint and make this inquiry part of the record. Based upon appellant's statement to the trial court, we find the trial court did not have any further obligation to inquire into appellant's request for new counsel.
`[B]efore a motion for new counsel must be granted, the person making the motion must establish that that person and the attorney have no communication, cooperation or trust. State v. Pruitt (1984),18 Ohio App.3d 50, 57, * * *. State v. Warren (1990),67 Ohio App.3d 789, 798, * * *.' `[A]n indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result.'State v. Blankenship (1995), 102 Ohio App.3d 534, 558, * * *. State v. Edsall (1996), 113 Ohio App.3d 337,339, certiorari denied (2000), 531 U.S. 842.
Appellant's statement to the trial court, that he did not believe defense counsel was representing him properly, did not establish good cause for appointment of new counsel. Further, because appellant failed to allege facts which, if true, would require the appointment of new counsel, the trial court had no duty to inquire into appellant's complaint. State v. Carter (1998), 128 Ohio App.3d 419, 423. "* * * [V]ague or general objections do not trigger the duty to investigate further." Id.
We conclude the trial court did not err when it failed to inquire into appellant's complaint and denied appellant's request for new counsel.
Appellant's First Assignment of Error is overruled.
 II
In his Second Assignment of Error, appellant contends the trial court erred when it failed to find that the prosecutor exercised a peremptory challenge in a racially discriminatory manner. We disagree.
Specifically, appellant argues the prosecutor improperly used a peremptory challenge to remove Juror No. 7, a black juror, in violation ofBatson v. Kentucky (1986), 476 U.S. 79. In the Batson case, the United States Supreme Court devised a test to be used in determining whether a peremptory removal of a juror is racially motivated. The Ohio Supreme Court adopted the Batson test in Hicks v. Westinghouse Materials Co. (1997), 78 Ohio St.3d 95, certiorari denied (1997), 522 U.S. 859.
Under the Batson test, a party opposing a peremptory challenge must demonstrate a prima facie case of racial discrimination in the use of the strike. Id. at 96. To establish a prima facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently "discriminating" device, permitting "those to discriminate who are of a mind to discriminate." State v.Hernandez (1992), 63 Ohio St.3d 577, 582, certiorari denied (1992),506 U.S. 898.
The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See Batson at 96-97.
Assuming a prima facie case exists, the striking party must then articulate a race neutral explanation "related to the particular case to be tried." Id. at 95. A simple affirmation of general good faith will not suffice. However, the explanation "need not rise to the level justifying exercise of a challenge for cause." Id. at 97. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion on the basis of race. Hernandez v. New York (1991),500 U.S. 352, 363.
In the case sub judice, the prosecutor, in moving to use a peremptory challenge to remove Juror No. 7, stated as follows on the record:
 PROSECUTOR: * * * I would ask the Court to permit me to use him [Juror No. 7] for a preemptory (sic). Because he has been reading and not paying a lot of attention and his responses are somewhat of a level that concerns me.
THE COURT: As far as intellect?
 PROSECUTOR: Yes. His reading choices, how he describes them, just the way he's answered questions. I just have some real concerns. Tr. at 68-69.
Defense counsel objected to the prosecutor's peremptory challenge of Juror No. 7 on the basis that there was not a sufficient inquiry to determine whether Juror No. 7 could pay attention to the evidence. Id. at 69. In permitting a peremptory challenge as to Juror No. 7, the trial court stated:
 The Court would like to just add that I listened to the responses of Juror No. 7 and I was concerned on the first two responses. But in the response where he asked about things that he had read I was concerned that he is still six years old and reads the Hardy Boys, that he reads comic books and he almost had a child-like explanation of why he reads those books and kind of in a singsong response to the prosecution's questions. Tr. at 69-70.
In applying the Batson analysis, the trial court and the prosecutor assumed a prima facie showing of discriminatory use of a peremptory challenge and proceeded to resolve the issue based upon the second prong of the Batson analysis. Under the second prong, the burden shifts to the prosecutor to articulate racially neutral explanations related to the particular case for the use of a peremptory challenge. The prosecutor clearly set forth race neutral reasons for exercising a peremptory challenge as to Juror No. 7. The prosecutor expressed her concerns about Juror No. 7's ability and desire to pay attention to the proceedings and about his intellect and reading selections.
We must give deference to a trial court's findings under a Batson
claim. In the Hicks case, the Court explained:
 Review of a Batson claim largely hinges on issues of credibility. Accordingly, we ordinarily defer to the findings of the trial court. See Batson at 98, * * *. Whether a party intended to racially discriminate in challenging potential jurors is a question of fact, and in the absence of clear error, we will not reverse the trial court's determination. Hernandez v. New York, 500 U.S. at 369 * * *; State v. Hernandez, 63 Ohio St.3d at 583, * * *. Trial judges, in supervising voir dire, are best equipped to resolve discrimination claims in jury selection, because those issues turn largely on evaluations of credibility. See Batson at 98, * * *. Hicks at 102.
We conclude the trial court did not err when it permitted the prosecutor to exercise a peremptory challenge because the prosecutor's reasons for exercising the challenge, as acknowledged by the trial court in its ruling, were clearly permissible, race neutral reasons.
Appellant's Second Assignment of Error is overruled.
 III
Appellant contends, in his Third Assignment of Error, that the prosecutor committed misconduct, during voir dire and closing argument, which denied him his right to a fair and impartial trial. We disagree.
The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990), 51 Ohio St.3d 160, 165, certiorari denied (1990), 498 U.S. 1017. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24. It is based upon this standard that we review appellant's arguments under this assignment of error.
Appellant first claims the prosecutor committed misconduct when she informed the jury that the case at bar involved drugs, that drugs are a problem in society, and that many societal problems relate to illegal drug use. Tr. at 43. Defense counsel objected to this statement before the prosecutor could present her question to the venire. Id. The trial court cautioned the prosecutor and the prosecutor continued with her question as follows:
 * * * I guess what my question would be is there anybody here that has any particular strong feelings about drugs and the law, that the laws should be more lenient or that the laws should be stricter, that we should handle those matters in different ways or that we should just do things as we are doing them? Is there anybody here that has any particularly strong feelings either way about the drug laws? Id.
We find the above statement and question asked by the prosecutor were not improper. The prosecutor did not convey the idea that convictions need to be made simply because drugs were involved in the case. Further, the prosecutor presented a fair question to probe the jury about any biases they may have.
Appellant also argues, under this assignment of error, that the prosecutor made an improper statement during closing argument. The prosecutor stated as follows:
 We were fortunate that night that the officers — and probably the defendant was fortunate that night more than any of us that the officers were able to stop him from his purpose and he didn't wind up in a hospital or worse. And because we got some more crack cocaine off the streets. Id. at 203.
Defense counsel objected to the above statement and the trial court sustained the objection. Id. A closing argument that goes beyond the record may constitute prejudicial error, "particularly where the remarks call for the jury to convict to meet a public demand." State v. Moritz
(1982), 63 Ohio St.2d 150, 157. However, the closing argument must be viewed in its entirety to determine if the prosecutor's remarks were prejudicial. State v. Burgun (1978), 56 Ohio St.2d 354, 366.
In this case, we conclude that after reviewing the prosecutor's closing argument in its totality, there is no prejudice to the appellant. The trial court instructed the jury, prior to closing arguments, that closing arguments are not evidence in the case. Tr. at 169. Further, after sustaining defense counsel's objection, the trial court struck the prosecutor's statement. Id. at 203.
In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained-of conduct in the context of the entire trial. [Citation omitted.] We have been continually reminded by reviewing courts that a trial is similar to an arena of combat where our adversarial system generates both tension and turmoil during trial, State v. Stephens
(1970), 24 Ohio St.2d 76, * * *, and where trials cannot be `squeezed dry of all feeling.' State v. Keenan (1993),66 Ohio St.3d 402, 409, * * *. It is conceded that the prosecutor may `strike hard blows, [but the prosecutor] is not at liberty to strike foul ones.' Berger v. United States (1935), 295 U.S. 78,88 * * *. State v. Kelly (1994), 93 Ohio App.3d 257,266-267.
We conclude appellant was not denied his right to a fair trial based upon the statements the prosecutor made during voir dire and closing argument.
Appellant's Third Assignment of Error is overruled.
 IV, V
We will address appellant's Fourth and Fifth Assignments of Error simultaneously as both concern the charge of tampering with evidence. Appellant claims, in his Fourth Assignment of Error, that the trial court erred when it failed to grant his Crim.R. 29(A) motion for acquittal made at the close of the state's case and at the close of all the evidence. In his Fifth Assignment of Error, appellant contends his conviction was not supported by sufficient evidence and is against the manifest weight of the evidence.
Appellate review of the denial of a Crim.R. 29(A)[1] motion for acquittal is essentially the same as a review challenging the sufficiency of the evidence. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
As noted above, appellant's Fourth and Fifth Assignments of Error focus on the charge of tampering with evidence. In order to prove the tampering with evidence charge, the state had to prove the following:
 (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
* * *
The evidence presented at trial established that appellant attempted to conceal and destroy the crack cocaine by chewing it. Appellant did so in order to impair its value as evidence against him in a criminal proceeding. Both Officer Weyer's and Detective Bartolet's testimony supports this conclusion. Thus, the trial court properly overruled appellant's motions for acquittal. Further, the jury's conviction for tampering with evidence is supported by the sufficiency of the evidence.
As to the manifest weight of the evidence claim, appellant presented no overwhelming exculpatory evidence which demonstrates that the jury clearly lost its way in choosing to believe the testimony of Officer Weyer and Detective Bartolet. Accordingly, appellant's conviction for tampering with evidence is not against the manifest weight of the evidence.
Appellant's Fourth and Fifth Assignments of Error are overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Pursuant to App.R. 24(A)(2), appellant shall pay costs in this matter.
Hon. W. Scott Gwin, P. J. Hon. Sheila G. Farmer, J. Hon. John W. Wise, J. concur.
[1] (A) Motion for judgment of acquittal
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.